UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**VIRGINIA REDDING,**

        **Plaintiff,**

v.                                                                    **Case No:  6:19-cv-1857-Orl-41GJK**

**COLOPLAST CORP.,**

        **Defendant.**
_____/

**ORDER**

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgement ("Motion," Doc. 53) and Memorandum of Law in Support (Doc. 54). Plaintiff filed a Memorandum in Opposition ("Response," Doc. 58) and Defendant filed a Reply (Doc. 62). For the reasons stated herein, Defendant's Motion will be granted in part and denied in part.

**I.   BACKGROUND**

In mid-December 2009, Dr. Robert Weaver implanted Plaintiff with a Supris-Suprapubic Sling System and a Novasilk-Synthetic Flat Mesh to treat her either prolapsed bladder or vaginal cuff prolapse.[1] (Short Form Complaint, Doc. 1, at 3–4; First Am. Pl. Fact Sheet, Doc. 53-1, at 4). Two weeks later, on December 28, 2009, after experiencing pain, heaviness, and an unpleasant odor in her pelvic area, Plaintiff went back to see Dr. Weaver. (Redding Dep., Doc. 53-10, 91:21–22, 92:4–23, 93:21–23, 95:13–25; Weaver Dep., Doc. 53-8, 102:1–4; Return Office Visit Form,

---

[1] Plaintiff's First Amended Fact sheet states in one section that Plaintiff had a "prolapsed bladder" and in another that she suffered from "vaginal cuff prolapse." (Doc. 53-1 at 4). The Operative Report (Doc. 53-2) states she suffered from a "vaginal cuff prolapse" among other issues. (*Id.* at 1). The technical identification of which ailment Plaintiff suffered is irrelevant to the question before this Court at this time.

Page **1** of **8**

Doc. 53-9, at 2). At the visit, Plaintiff informed Dr. Weaver of her pain and he examined her, finding a slight erosion of the mesh as well as an infection. (Doc. 53-10 at 92:20–23; 93:19–23; Doc. 53-8 at 102:5–13, 21–23). Dr. Weaver informed Plaintiff of these problems and Plaintiff understood that there was an erosion of the implanted mesh. (Doc. 53-10 at 93:21–23, 94:3–6; Doc. 53-8 at 102:18–25). Plaintiff thought that the pain, erosion, and infection were potentially due to her body rejecting the products or from the surgery itself. (Doc. 53-10 at 93:11–18, 94:23–95:12). She thought that this rejection may be "[her] body going through a transition" of accepting "a foreign object" and of "the healing process." (Redding Dep., Doc. 58-1, at 95:6–12, 101:22–102:3).

Plaintiff had several more follow-up visits with Dr. Weaver, during which he examined her, noted that the erosion was still present, and informed Plaintiff of the same. (Doc. 53-8 at 103:10–104:8, 105:19–106:13). At some point in 2010, Dr. Weaver informed Plaintiff that she was could go about her daily life. (Doc. 58-1 at 149:17–19). Plaintiff states that she did not learn that it was the mesh itself causing her injuries until she saw a television advertisement that spoke of the complications that other women had experienced after transvaginal surgery. (*Id.* at 149:20–25).

Plaintiff filed her Short Form Complaint on September 18, 2014, alleging sixteen different claims against Defendant. (Doc. 1 at 5). Defendant moves for summary judgment on each claim. (Doc. 54 at 1–2).

## II.     LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

### III. ANALYSIS

Defendant moves for summary judgment on each of Plaintiff's claims. First, Defendant makes a general argument that all of Plaintiff's claims are time barred due to the expiration of the four-year statute of limitations. The parties' arguments regarding statute of limitations will be addressed below.

However, Defendant makes a variety of specific arguments regarding the dismissal of: Count I—Negligence insofar as it is premised on negligent manufacture; Count III—Strict Liability Manufacturing Defect; Count V—Strict Liability Defective product; Count VI and Count

VII—Breach of Express and Implied Warranty; Count IX—Constructive Fraud; Count X—Discovery Rule, Tolling, Fraudulent Concealment; Count XIII—Negligent Infliction of Emotional Distress; Count XIII—Consumer Protection Laws, specifically Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); and Count XV—Unjust Enrichment. In regard to these claims, Plaintiff's Response states that "Plaintiff does not intend to pursue" them. (Doc. 58 at 2).[2] Accordingly, due to Plaintiff's abandonment, summary judgment as to those counts will be granted in favor of Defendant. The Court now turns to the statute of limitations argument.

Under to Florida law, plaintiffs have four years to bring a products liability action.[3] Fla. Stat. § 95.11(3)(e). The statute of limitations period does not begin to run until "the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(b). "The knowledge required to commence the limitation period, however, does not rise to that of legal certainty." *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991), *holding modified on other grounds by Tanner v. Hartog*, 618 So. 2d 177 (Fla. 1993). "Plaintiffs need only have notice, through the exercise of reasonable diligence, of the possible invasion of their legal rights." *Id.* "Notice, in turn, 'has two essential ingredients: an injury distinct in some way from conditions naturally to be expected from the plaintiff's condition, and exposure to the product in question.' 'Use of the conjunction 'and' in this equation necessarily implies that the connection must be to some extent causal.'" *Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1323 (11th Cir. 2017) (internal citation omitted) (quoting *Babush v. Am. Home Prods. Corp.*, 589 So.2d 1379, 1381 (Fla. 4th DCA 1991)).

---

[2] Regarding Count X—Discovery Rule, Tolling, and Fraudulent Concealment, Plaintiff concedes that this is not a cause of action that can be brought pursuant to Florida law. Granting Defendant's summary judgment as to this Count, however, does not necessarily prohibit Plaintiff from utilizing these theories with regard to other claims.

[3] The parties do not dispute that Florida law applies in this case.

Defendant argues that Plaintiff's cause of action began to accrue on December 28, 2009, when she was told by her doctor and understood that that there was an "erosion of the mesh occurring in [her] vagina." (Doc. 53-10 at 94:3–6). According to Defendant, being told that the mesh that was recently implanted within her was eroding was notice of "the possible invasion of [her] legal rights." (Doc. 54 at 10). Therefore, per Defendant's argument, Plaintiff needed to file her case by December 2013, but failed to do so.

At first blush, this argument makes a certain amount of logical sense. However, recent Eleventh Circuit authority compels the opposite conclusion. In *Eghnayem*, the Eleventh Circuit did an in-depth analysis of the leading Florida precedent in this area. The plaintiff in *Eghnayem* suffered from incontinence, pelvic pain, and pressure after a similar implantation surgery. 873 F.3d 1311. The plaintiff's doctor told her that she had exposed mesh in her vagina and performed an in-office surgery to trim the mesh in an attempt to alleviate plaintiff's symptoms. *Id.* The plaintiff testified that she believed the incontinence was "related to the mesh repair" and Defendant in the case believed this showed that she was on notice sufficient to trigger the running of the statute of limitations. (*Id.* at 1324).

However, the *Eghnayem* Court found that incontinence, though dramatic, was not an adequately obvious symptom to put the plaintiff on notice, as it was not sufficiently distinct from symptoms that might be expected after a vaginal surgery. *Id.* The *Eghnayem* Court explained that "when 'there is nothing about an injury that would communicate to a reasonable lay person that the injury is more likely a result of some failure of medical care than a natural occurrence that can arise in the absence of medical negligence, the knowledge of the injury itself does not necessarily trigger the running of the statute of limitations.'" *Id.* (quoting *Norsworthy v. Holmes Reg'l Med. Ctr., Inc.*, 598 So. 2d 105, 107 (Fla. 5th DCA 1992), *approved sub nom. Kronman v. Norsworthy*,

618 So. 2d 186 (Fla. 1993)). "[A]n injury must stand out from the norm to start the statutory clock." *Id.* The court held that whether the statute of limitations had run was an issue of fact for the jury, as a jury could find credible plaintiff's claim that she believed that the incontinence was a symptom related to the mesh implantation surgery and not the device itself. *Id.*

Less than a year later, the Eleventh Circuit revisited the issue in *In re Mentor Corp. Obtape Transobturator Sling Products Liability Litigation*, 748 F. App'x. 212 (11th Cir. 2018). The plaintiff in *In re Mentor* was surgically implanted with a vaginal mesh device to treat her stress urinary incontinence. *Id.* at 213. After the surgery, the plaintiff suffered various symptoms including pain and infection, and, plaintiff's doctor observed protruding mesh and excised it. *Id.* at 213–14. Ultimately, plaintiff had the device removed, which caused her symptoms to stop. *Id.* at 213. The plaintiff claimed that she "didn't know what caused" her symptoms and that she thought the symptoms were caused by her body "rejecting [the mesh] or something." *Id.* at 214. She believed that the problems "were related to her personally or perhaps caused by some other factor besides the mesh" and never suspected that the device itself was defective until years after the surgery, when plaintiff saw a television commercial that informed her that her symptoms may have been caused by a defect in the device. *Id.* at 213–215. Plaintiff brought suit seven years after she had the surgery to remove the device. *Id.* at 213.

The defendant in *In re Mentor* filed a motion for summary judgment arguing that the suit was time barred due to the claim accruing at the latest when the device was removed. *Id.* The district court agreed and granted summary judgment. *Id.* However, in an unpublished opinion,[4] the Eleventh Circuit disagreed and overturned the decision in light of its previous decision in

---

[4] Unpublished opinions, while not binding on this Court, are highly persuasive. 11th Cir. R. 36-2.

*Eghnayem*. *Id.* at 213–214. In line with *Eghnayem*, the *In re Mentor* Court noted that "for a claim to accrue, a plaintiff's injuries must be 'obviously unusual.'" *In re Mentor*, 748 F. App'x. at 216 (quoting *Eghnayem*, 873 F.3d at 1324). The Eleventh Circuit reasoned that pain, infection, and mesh protrusion "were acknowledged side effects of [the specific device], mesh implants generally, and mesh implant surgery. In other words, such symptoms could arise from a nondefective mesh that had been implanted through surgery that was properly performed." *Id.* at 217. Thus, the *In re Mentor* Court determined that, taking all inferences in favor of plaintiff, her injuries were not sufficiently distinct to put her on notice of a cause of action and overruled the district court finding that when the claim accrued was a question of fact for the jury. *Id.*

The facts in *Eghnayem* and *In re Mentor* are strikingly similar to the facts before this Court. Like the Plaintiff here, the plaintiffs in those cases were informed by their doctors that something was wrong with their implants. But the injuries they suffered, like Plaintiff's here, were not sufficiently different from the symptoms that could have occurred as a result of the surgeries absent any defect to put them on notice. In light of these factual similarities, the Court cannot reach a different outcome. Accordingly, summary judgment will be denied as to Defendant's statute of limitations arguments.

## IV.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 53) is **GRANTED in part** and **DENIED in part**.

2. Summary Judgment is **GRANTED** in favor of Defendant as to: Count I insofar as it relates to negligent manufacture; Count III; Count V; Count VI; Count VII; Count IX; Count X; Count XII; Count XIII; and Count XV.

    3.  The Motion for Summary Judgment is **DENIED** in all other respects.

**DONE** and **ORDERED** in Orlando, Florida on February 21, 2020.



Copies furnished to:

Counsel of Record