UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VIRGINIA REDDING,

    Plaintiff,

v.       Case No.: 6:19-cv-01857-CEM-GJK

COLOPLAST CORP.,

    Defendant.

_____/

**DEFENDANT COLOPLAST CORP.'S AMENDED[1]
UPDATED RENEWED MOTION TO STRIKE DR. RALPH ZIPPER
OR, IN THE ALTERNATIVE, TO CONTINUE TRIAL**

    Defendant Coloplast Corp. ("Coloplast") hereby updates its Renewed Motion to Strike Dr. Ralph Zipper (Doc. 224), consistent with its August 13, 2021 Notice of Supplementing Renewed Motion to Strike Dr. Zipper (Doc. 235). Dr. Zipper's recent deposition confirms what Coloplast feared in its prior motions: Plaintiff intends to rely on him for expert, and not fact, testimony, in violation of Rule 26(a)'s disclosure requirements. Allowing Plaintiff's belated addition of Dr. Zipper would *severely* prejudice Coloplast's trial preparation, as it would require Coloplast to update its own experts' opinions, potentially disclose new experts, identify new fact witnesses, and file *Daubert* challenges to Dr. Zipper's expert opinions--all of which would necessitate another continuance of the trial set for September 13, 2021. As explained below, Dr.

---

[1]     Coloplast Corp. files this amended motion solely to include the exhibits omitted inadvertently from the filing of Doc. 241.

Zipper is a multi-million-dollar expert for the plaintiff's bar in mesh cases and his eleventh-hour disclosure injects new opinions and new theories into this case, leaving Coloplast unable to adequately adjust to the changed playing field.

Accordingly, the Court should strike the opinions and testimony of Dr. Zipper. Alternatively, if the Court denies Coloplast's motion and permits Dr. Zipper to testify, it should continue the September 13, 2021 trial date and permit Coloplast to engage in the discovery Dr. Zipper's testimony necessitates. Anything else would be plainly unfair.

## I. BACKGROUND

Plaintiff identified Dr. Ralph Zipper on her witness list for the very first time on January 8, 2021; Plaintiff never previously disclosed Dr. Zipper as either a fact witness or an expert witness in this action. Thus, on January 21, 2021, Coloplast moved to strike Dr. Zipper under Federal Rules of Civil Procedure 26 and 37. (Doc. 202.) Given the intervening trial continuance due to COVID-19, the Court directed Plaintiff to respond to Coloplast's motion to strike by July 15, 2021. (Doc. 207.) The Court subsequently set trial for a date certain of September 13, 2021. (Doc. 210.)

On June 29, 2021, the Court entered an Order directing Coloplast to file a renewed motion to strike on or before July 9, 2021, addressing "the current state of this case including what, if anything, has been done to mitigate any potential prejudice resulting from the belated disclosure of Dr. Zipper as an expert witness." (Doc. 223 at 4.) On July 9, 2021, Coloplast renewed its motion to strike stating that it was proceeding with Dr. Zipper's deposition in an attempt to cure the prejudice and

requesting, in the alternative, to update the renewed motion to strike after Dr. Zipper's deposition. (Doc. 224.)

Then, on August 11, 2021, Coloplast took Dr. Zipper's deposition, which confirmed Plaintiff's intent to elicit expert testimony from him at trial. Among other matters properly within the province of expert opinion testimony, Dr. Zipper offered his opinions on: the safety and efficacy of polypropylene mesh generally, and of Novasilk specifically; the adequacy of Novasilk's labeling and clinical studies; the pros and cons of the surgical technique Plaintiff's surgeon used to implant her Novasilk and Supris; and how his urogynecology background affords him a better understanding of the risks and benefits of surgical mesh implants like Novasilk.

Realizing that it would suffer severe prejudice by the belated addition of Dr. Zipper, Coloplast now renews its motion to strike him as a witness from this case.

## II. ARGUMENT

### A. The Court should prohibit Dr. Zipper from testifying.

The Court should strike Dr. Zipper because Plaintiff violated the disclosure requirements of Rule 26 by failing to timely disclose him as a witness, thereby prejudicing Coloplast's trial preparation. Rule 26 requires a party to disclose all individuals likely to have discoverable information. Fed. R. Civ. P. 26(a)(1)(A). That requirement is ongoing—a party must timely supplement its disclosures if it learns that the information is incomplete or incorrect and is not otherwise known to the other party. Fed. R. Civ. P. 26(e)(1). In other words, "[t]he deadline for a final witness list does not alleviate the duty to supplement under Rule 26(e)." *Equal Employment*

3

*Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, No. 317CV00147RLYMPB, 2020 WL 1663130, at *2 (S.D. Ind. Jan. 16, 2020),

Similarly, a plaintiff cannot rely upon untimely or incomplete expert opinions: "A party must make [expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). These expert disclosures "must contain . . . a *complete statement of all opinions* the witness will express and the basis and reasons for them [and] the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). "Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004) *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006). The Rule 26 requirements are "comprehensive" and are "not a matter to be ignored or . . . trivialized." *Weaver v. Lexington Ins. Co.*, No. 8:05-CV-1913, 2007 WL 1288759, at *1 (M.D. Fla. May 2, 2007).

Thus, a party failing to timely disclose expert opinions cannot present such opinions "on a motion, at a hearing, or at a trial" unless that party proves that the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). As amended in 1993, Rule 37 requires strict adherence to the disclosure requirements of Rule 26. The Eleventh Circuit regularly holds as such, *see, e.g., Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310–11 (11th Cir. 2009) (upholding district court's decision to strike expert's affidavit offered after disclosure deadline as untimely); *Corwin v. Walt Disney*

*Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007) (similar); *Cooper*, 390 F.3d at 728 (similar); *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (similar), and district courts frequently exclude or strike untimely expert opinions under these principles, *see Pringle v. Johnson & Johnson*, No. 13-81022-CIV, 2019 WL 6723822, at *5 (S.D. Fla. Dec. 11, 2019) ("Plaintiff's belated attempt to bring a new expert opinion into the case is not justified.  Nor is it harmless, since discovery has been closed . . . and the summary judgment briefing [is] completed . . . ."); *5634 E. Hillsborough Ave., Inc. v. Hillsborough County*, No. 8:06-cv-1695-T-26EAJ, 2007 WL 2936211, at *3 n.18 (M.D. Fla. Oct. 4, 2007) (court should not consider expert affidavits submitted in response to summary judgment that "contain material and opinions of experts not previously disclosed"); *Weaver*, 2007 WL 1288759, at *3 (untimely and inadequate expert disclosure caused "extraordinary burden" to opposing party and "must be dealt with accordingly"); *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 696 (N.D. Ga. 2006) (granting motion to strike experts' declarations because plaintiff did not properly disclose experts under Rule 26).

Applying these principles here, this Court should not allow Plaintiff to call Dr. Zipper at trial.  As explained in Section 1 below, Dr. Zipper is an expert witness whom Plaintiff failed to include in her Rule 26(a)(2) expert disclosures.  But even assuming *arguendo* that Dr. Zipper offers any fact testimony, Section 2 explains that Plaintiff also failed to timely identify him as a fact witness, *i.e.*, someone who she "believe[d] possess[ed] information concerning [her]" alleged injuries, in her Plaintiff Fact Sheet. So either way, Plaintiff's belated disclosure of Dr. Zipper violates Rule 26.  *See Johnson*

5

*v. Neopost, Inc.*, No. 1:06-CV-1202-JOF-AJB, 2007 WL 9701787, at *3 (N.D. Ga. Nov. 8, 2007) (stating that "Rule 26 does not distinguish between fact and opinion witnesses"). And as explained in section 3, Plaintiff's untimely disclosure is neither substantially justified nor harmless, which mandates striking Dr. Zipper.

> 1. **Dr. Zipper offers undisclosed expert testimony in violation of Rule 26.**

A review of the relevant record shows that Dr. Zipper is really an expert witness, not a fact witness. As an initial matter, Dr. Zipper has been paid at least "$1,000,000" and possibly "somewhere between $2,000,000 and $3,000,000" for his work as a plaintiffs' expert in mesh litigation (*see* Ex. A Excerpts of Aug. 11, 2021 Dep. of Ralph Zipper, M.D. ("Zipper Dep.") at 107:11–13), including for Plaintiff's law firm "in response to a request for expert opinions for certain plaintiffs" (*see id.* at 16:23–17:11). And just like in those other cases, Dr. Zipper never treated Plaintiff as a patient. (*See id.* at 13:14–15:1.) He therefore has no personal knowledge of the treatment and care administered in this case.

Further confirming this point, Plaintiff's own description of Dr. Zipper's testimony makes clear that she intends for him to offer expert testimony. The description previews that he will testify about the design of the Novasilk device based on research, observations, findings, opinions, and conclusion regarding the risks of the device:

> Dr. Zipper is likely to testify regarding his experience with and knowledge regarding NovaSilk, **including . . . his clinical experience and research regarding NovaSilk [and] his observations, findings,**

6

> **opinions, and conclusions regarding the risks and complications associated with NovaSilk** (including the nature, extent and severity thereof) formed based on his experience and research.

(Ex. B, Excerpts of Pltf.'s Witness List at 11–12 (emphasis added).) In so doing, Plaintiff attempts an end-run around the purpose of Rule 701(c): to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 Advisory Committee's note to 2000 amends.

Dr. Zipper's deposition testimony leaves no doubt that he will offer expert testimony. Indeed, Plaintiff's counsel essentially proffered his qualifications as an expert witness by walking him through his Curriculum Vitae (*see id.* at 121:13–123:7) before offering several expert opinions. For example, Dr. Zipper:

- stated he "consider[s] [him]self . . . one of the most knowledgeable people on the planet earth with regard to the clinical application of Novasilk" (Ex. A, Zipper Dep. at 35:7–22);

- claimed that Novasilk "was commercialized without guidance on how to implant it" and expounded upon "adapt[ing] techniques that [he] had learned for native tissue surgery . . . to implant mesh . . . such as Novasilk" (*see id.* at 126:16–129:3);

- agreed with plaintiff's counsel that Novasilk's design made it "well-suited to have sutures attached to it" (*id.* 131:10–132:1);

- offered numerous opinions on the "method[s]" used to implant Novasilk and on its "material properties," including that "the material . . . caused chronic inflammation" (*id.* at 149:7–152:6);

- agreed that his "experience with [Novasilk]" provides him with a basis for offering opinions on its safety and efficacy (*see id.* at 152:12–25);

- opined that, "based on [his] experience with" Novasilk, its "material was defective" and its "label was defective" (*id.* at 155:12–22);

7

- expounded upon the significance of his "background as a urogynecologist instead of simply . . . a urologist as it relates to" understanding the risks and benefits of, and the methods used to implant, prolapse meshes such as Novasilk (*see id.* at 171:1–172:10);

- spoke at length regarding the "danger[s]" of developing new healthcare treatments in general with respect to risk-benefit analyses (*see id.* 172:11–175:15); and

- explained what he believes are the "pros and cons" of "suturing the devices together[,]" as Ms. Redding's surgeon did when performing her pelvic-floor reconstructive surgery using Supris and Novasilk. (*See id.* 187:22–189:6.)

As the above, non-exhaustive excerpts demonstrate, Dr. Zipper's testimony is based necessarily on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. 701(c). He admittedly draws on his own clinical experience and research to opine on Novasilk's design and labeling, among other matters within the province of expert testimony, straying far outside the bounds of matters "rationally based on [his] perception[.]" Fed. R. Evid. 701(a). Plainly, Plaintiff attempts to evade Rule 701(c) by claiming otherwise.

As this Court has held, Plaintiff's argument that Dr. Zipper is a mere fact witness "would, taken to its logical conclusion, end all distinction between expert and lay witnesses as, presumably, all experts have personal knowledge of the field in which they are experts." *Hill v. Allianz Life Ins. Co. of N. Am.*, No. 6:14-cv-950, 2016 WL 7228748, at *3 (M.D. Fla. Jan 20, 2016) (Mendoza, J.). That is precisely why "Rule 701 is focused on whether a witness has personal knowledge of facts relevant to the subject case and not whether a witness has personal knowledge as to the basis of his opinion." *Id*. Because Dr. Zipper admittedly knows "absolutely nothing about Ms.

8

Redding or her claims"—*i.e.*, that he has no knowledge of the facts relevant to this case—he cannot plausibly be characterized as a fact witness. (Ex. A, Zipper Dep. at 14:23–15:1.) He is instead an expert witness who Plaintiff should have disclosed long ago under Rule 26(a)(2), which would have allowed Coloplast to prepare its case accordingly to address his opinions through its experts and/or pretrial motion practice.

> **2. Even assuming *arguendo* that Dr. Zipper offers fact witness testimony, Plaintiff's disclosure violates Rule 26.**

Plaintiff also did not timely identify Dr. Zipper as a fact witness, *i.e.*, someone who she "believe[d] possess[ed] information concerning [her]" alleged injuries, in her Plaintiff Fact Sheet. (*See* Ex. C, Excerpts of 1st Am. Pltf. Fact Sheet at 24.) Indeed, the first time Coloplast learned that Plaintiff intended to call Dr. Zipper to testify as a witness was when she served her witness list on January 8, 2021—just one month before the previously scheduled trial date, and nearly two years after Plaintiff disclosed her retained and "non-retained" expert witnesses. Plaintiff's explanation for her failure to previously disclose Dr. Zipper—that she complied with Rule 26(a)(3) by disclosing him as a witness "[t]hirty days before the scheduled trial" (Doc. 227 at 5)—is unavailing, as "[t]he deadline for a final witness list does not alleviate the duty to supplement under Rule 26(e)." *Equal Employment Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, No. 317CV00147RLYMPB, 2020 WL 1663130, at *2 (S.D. Ind. Jan. 16, 2020) (citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996)).

Nor can Plaintiff find safe harbor in claiming Coloplast should have known that she may call Dr. Zipper as a witness at trial because Coloplast's corporate representative witness on clinical data, Mr. Dale Klous, "relied on research and articles completed by Dr. Zipper" in preparation for his April 16, 2019 deposition. (*See* Doc. 227 at 3–4.) Not only does Plaintiff overstate that testimony—Mr. Klous testified generally that he "reviewed the clinical literature on Novasilk and Exair" (Doc. 227-1 at 374:7–9), without once referencing Dr. Zipper by name—it also "provides nothing to suggest that Plaintiff[] intended to use [Dr. Zipper] as a witness" at trial. *Diamond Resorts Int'l, Inc. v. Aaronson*, No. 617CV1394ORL37DCI, 2019 WL 1974833, at *4 (M.D. Fla. Mar. 13, 2019).

Regardless, that argument cuts both ways: to the extent Mr. Klous's testimony was sufficient to put Coloplast on notice that Dr. Zipper may testify during Plaintiff's case-in-chief, it also should have compelled Plaintiff to supplement her initial disclosures or Plaintiff Fact Sheet, or both. Plaintiff's failure to abide by her Rule 26(e) obligation warrants striking Dr. Zipper entirely. *See Hill*, 2016 WL 7228748, at *5–6 (granting defendant's motion to preclude plaintiff's untimely witness after finding that the plaintiff learned of the potential need for the testimony through the defendant's responsive pleading, filed three years prior).

### 3. Plaintiff's untimely disclosure is neither substantially justified nor harmless under Rule 37.

Plaintiff has not even attempted to show, nor could she show, that her untimely disclosure was "substantially justified" or "harmless" under Rule 37(c). The purpose

underlying this rule is "to prevent the 'sandbagging' of an opposing party with new evidence." *King v. Cessna Aircraft Co.*, No. 03-20482-CIV, 2010 WL 11505695, at *2 (S.D. Fla. May 7, 2010) (citation omitted). For that reason, a party that fails to comply with Rule 26 is barred from using an untimely witness or information at trial, "unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009).

Courts in this district apply a five-factor test to determine whether the non-disclosing party meets its burden of showing substantial justification or harmlessness: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *Bendik v. USAA Cas. Ins. Co.*, No. 619CV118ORL41EJK, 2019 WL 9466018, at *2 (M.D. Fla. Oct. 25, 2019). On balance, these factors weigh heavily in favor of striking Dr. Zipper from Plaintiff's witness list and precluding him from testifying at trial.

***Dr. Zipper's late disclosure prejudices Coloplast.*** Dr. Zipper's late disclosure qualifies as "surprise." Plaintiff received Coloplast's designated experts' reports and deposition testimony in April 2019. Thus, Plaintiff has known how Coloplast intends to position this case at trial for nearly two years before identifying Dr. Zipper in her trial witness list. Dr. Zipper's testimony attempts to undermine the basis of those

11

experts' opinions, with the goal of giving Plaintiff a tactical advantage over Coloplast by forcing Coloplast and its counsel to upend their trial strategy on the eve of trial. *Cf. Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 944 (11th Cir. 2015) (affirming denial of plaintiffs' motion for extension of time to disclose experts because "[a]llowing Plaintiffs to identify and disclose an entirely new expert so late in the proceedings would have likely resulted in . . . prejudice to Defendants").

More specifically, Coloplast's specific-causation expert, Dr. Brian Stone, has opined that the "surgical technique used in [Plaintiff's] procedure was . . . not appropriate" for various reasons, including because Dr. Weaver placed Plaintiff's Supris and Novasilk "in an overlapping fashion and sutured [them] together." (*See* Ex. D, Excerpts of Apr. 4, 2019 Case Specific Expert Report of Dr. Brian Stone at 18.) Yet Dr. Zipper testified that he used to suture together anterior mesh implants with mid-urethral slings "100% of the time[,]" and that he "trained [other] surgeons" and produced a "teaching video" on that same technique. (Ex. A, Zipper Dep. at 71:16–24.) As the time for supplementing Dr. Stone's expert opinions and for disclosing new expert opinions has long since passed, Coloplast would be significantly and unduly prejudiced if Dr. Zipper is permitted to offer this testimony at trial.

That Plaintiff declined to seek additional time to disclose new experts or to conduct additional discovery after her case was transferred to this Court from the Coloplast MDL only compounds the surprise—*i.e.*, the prejudice—caused by Dr. Zipper's untimely disclosure. To wit, on November 22, 2019, after this case was transferred to this Court from the Coloplast MDL, the parties filed a Case

12

Management Report in which "Plaintiff took the "position . . . that no further discovery [was] necessary or permitted and the case [was] ready for trial." (Doc. 98 at 3.) Plaintiff also fought against further motion practice relating to experts, asserting "that no further briefing [was] required" and arguing that "permit[ting] Coloplast to re-brief" its MDL-filed *Daubert* motions would "fl[y] in the face of the express intent of the transferring judge in the MDL." (*Id.*)

*Coloplast cannot cure the surprise.* Because "re-opening . . . discovery to allow additional reports and depositions would impose significant difficulties" on the parties and this Court given the close proximity to trial, currently set for September 13, 2021 (Doc. 210), Coloplast cannot cure the surprise caused by Dr. Zipper's disclosure. *Tech Data Corp. v. Au Optronics Corp.*, No. 8:11-CV-2454-T-33JSS, 2015 WL 12843886, at *8 (M.D. Fla. Oct. 22, 2015). For this same reason, Dr. Zipper's late disclosure is certain to disrupt trial in this case; it simply is not "possible for the parties to meaningfully engage in the . . . expert discovery" that his testimony necessitates. *Id.*

Such additional expert discovery would include supplementing Dr. Stone's general- and specific-causation opinions to address Dr. Zipper's opinions on Novasilk, which, in turn, would surely compel Plaintiff to supplement her experts' reports. And, of course, the parties would then need to depose one another's experts on those new opinions, which necessarily would require them to expend significant time (and money) on deposition preparation.

*Plaintiff has no reasonable explanation for failing to disclose Dr. Zipper timely.* As already discussed earlier, Plaintiff's explanation for disclosing Dr. Zipper long after

13

discovery had closed in this case in unavailing. For one, Dr. Zipper is an expert who should have been disclosed *years ago*; as such, he was required to produce an expert report so Coloplast could prepare adequately for his deposition. And even if he offered fact testimony, Plaintiff did not comply with Rule 26 simply by disclosing Dr. Zipper as a witness at least "[t]hirty days before the scheduled trial" (Doc. 227). Plaintiff admits she was aware of Dr. Zipper's prior consulting relationship with Coloplast at least as early as April 16, 2019, when Coloplast's "corporate representative for clinical studies on Novasilk, Dale Klous, testified and produced documents confirming that he relied on research and articles completed by Dr. Zipper." (*Id.* at 3–4.) As this Court has explained, "as of th[e] date" on which Plaintiff learned "of the need for evidence" related to Dr. Zipper's work on Novasilk, "Plaintiff had an obligation under Rule 26(e)(1)(A)" to disclose him as a witness at trial. *Hill*, 2016 WL 7228748, at *5. Her failure to do so tips the scales that much further toward striking Dr. Zipper's testimony.

*The other Rule 37(c) factors outweigh the importance of Dr. Zipper's testimony.* Even if the Court found Plaintiff's untimely disclosure to be justified, the Court should strike Dr. Zipper's testimony because Plaintiff's failure to disclose him as a witness during the discovery period is not harmless. "The failure to disclose a witness is harmless when there is no prejudice to the party entitled to the disclosure." *Johnson*, 2007 WL 9701787, at *3. "Examples of a harmless omission include a witness who is known to all parties or a witness who is listed by another party." *Id.* A defendant's mere awareness of a witness's existence, however, does not equate to its "knowledge that the [witness] *may be used to support a claim of the [p]laintiff*." *Little v. City of Anniston*,

14

No. 1:15-CV-954-VEH, 2016 WL 7407093, at *4 (N.D. Ala. Dec. 22, 2016) (emphasis in original).

Indeed, because Rule 26 is intended "to avoid surprise and minimize prejudice[,]" failing to identify a witness in a timely fashion "runs afoul of this purpose." *Id.* (citations omitted). Thus, notwithstanding that Dr. Zipper provided consulting services to Coloplast years before Plaintiff filed this lawsuit, allowing Plaintiff to add new expert testimony at this late stage significantly and unjustifiably prejudices Coloplast by depriving it "of a meaningful opportunity to perform discovery and depositions related to" the matters on which Dr. Zipper testified at his deposition. *Suescan v. Duracell, Inc.*, No. 20-CV-20864-FAM, 2021 WL 2666993, at *4 (S.D. Fla. June 11, 2021), report and recommendation adopted, No. 20-20864-CIV, 2021 WL 2661232 (S.D. Fla. June 29, 2021) (citing *Mitchell*, 318 F. App'x at 825). "A meaningful opportunity" to conduct additional discovery would include not only supplementing expert reports and deposing experts on their supplemental opinions, as noted above, but also preparing for and taking additional fact-witness depositions, such as of the sales representatives who, Dr. Zipper claimed, observed his technique for implanting biologic grafts and Novasilk. (*See* Zipper Dep. at 91:9–23.) Coloplast's inability to do so before trial is substantially and unduly prejudicial prejudice to its defenses at trial.

Plaintiff "had more than sufficient time to prepare her case and at this late juncture it would be unfair and prejudicial to allow [her] to add a last minute expert witness[.]" *Wilson v. Wal-Mart Stores, Inc.*, No. 5:07-cv-394-Oc-10GRJ, 2008 WL

15

11336714, at *2 (M.D. Fla. Oct. 22, 2008). Yet Plaintiff waited to disclose Dr. Zipper as a witness until well "after the close of discovery," and well after [Coloplast] filed its summary judgment motion" and *Daubert* motions. *Companhia Energetica Potiguar v. Caterpillar, Inc.*, No. 14-CV-24277, 2016 WL 3102225, at *8 (S.D. Fla. June 2, 2016). There is no "logical basis to conclude" that Plaintiff's untimely supplement is harmless. Accordingly, the Court should grant Coloplast's motion and preclude Dr. Zipper from testifying in this case. *Id.*; *see also King v. Cessna Aircraft Co.*, No. 03-20482-CIV, 2010 WL 11505695, at *2 (S.D. Fla. May 7, 2010) ("[W]e can not conclude that [p]laintiff's late disclosure is harmless because all deadlines in this case have already passed," including those for filing "motions for summary judgment").

### B. In the alternative, the Court should continue the trial to cure any prejudice to Coloplast.

If this Court permits Dr. Zipper to offer any testimony at trial in this case, Coloplast alternatively requests at least a six-month continuance of trial to provide Coloplast with the time it needs to conduct the discovery necessary to address Dr. Zipper's testimony. Rule 16(b)(4) empowers this Court to modify a schedule upon a showing of "good cause." *See Bassler v. George Weston Bakeries Distrib. Inc.*, No. 3:08-CV-595-J-32JRK, 2009 WL 10670778, at *2 (M.D. Fla. Nov. 25, 2009) (granting motion to continue trial upon showing of good cause). Whether good cause exists to grant a continuance turns on whether the moving party was diligent in seeking the extension. *Id.*

Here, Coloplast acted with the requisite diligence in seeking a continuance. Coloplast deposed Dr. Zipper only last week, on August 11, 2021, and received the transcript of his deposition on August 16, 2021—a mere two days ago. In other words, once it became apparent that Dr. Zipper's testimony, if permitted, would substantially and unduly prejudice Coloplast at trial, it filed this motion to alert the Court of the same.

If Dr. Zipper is permitted to take the stand as a witness at trial, there would be good cause to grant a continuance in light of the impact his testimony would have on Coloplast's trial strategy, as explained in Section II.A.2, *supra*. Specifically, Dr. Zipper's opinion testimony on Novasilk's design, labeling, and clinical data would require Coloplast not only to supplement its own experts' opinions and potentially disclose new experts, but also identify and depose additional fact witnesses, including individuals whom Dr. Zipper identified at his deposition, all of which would require significant time and money. Such additional discovery would likely lead to further motion practice; at a minimum, new *Daubert* motions to exclude any supplemental expert opinions, as well as additional motions *in limine* and motions to strike. With less than one month before trial is set to begin, Coloplast does not have nearly enough time to engage in that necessary discovery—and certainly not while also preparing for a three-week trial.

Because there would be good cause to continue the trial under Rule 16(b) if Dr. Zipper is permitted to testify, Coloplast requests that the Court grant at least a six-month continuance if it denies Coloplast's motion to strike.

17

## IV. CONCLUSION

For the foregoing reasons, Coloplast respectfully requests that the Court grant its Motion and enter an order prohibiting Dr. Zipper from testifying either as a fact witness or as an expert witness. Alternatively, Coloplast respectfully requests that this Court grant at least a six-month continuance of the trial in this case to allow Coloplast sufficient time to conduct additional, necessary discovery concerning the subjects of Dr. Zipper's testimony.

Dated: August 18, 2021  Respectfully submitted,

/s/ David J. Walz
Edward W. Gerecke
Florida Bar Number 328332
David J. Walz
Florida Bar Number 697273
Caycee D. Hampton
Florida Bar Number 0100922
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., 10th Floor (33607)
P.O. Box 3239
Tampa, Florida 33601
Telephone: (813) 223-7000
Fax: (813) 229-4133
Email: egerecke@carltonfields.com
       dwalz@carltonfields.com
       champton@carltonfields.com

Johanna W. Clark
Florida Bar Number 196400
CARLTON FIELDS, P.A.
200 S. Orange Ave., Ste 100
Orlando, FL 32801
Telephone: (407) 849-0300
Fax: (407) 648-9099
Email: jclark@carltonfields.com

>W. Ray Persons
>Florida Bar Number 101747
>Valentin Leppert
>Florida Bar Number 97996
>KING & SPALDING LLP
>1180 Peachtree Street, N.E.
>Atlanta, GA 30309
>Telephone: (404) 572-4600
>Fax: (404) 572-5100
>Email: rpersons@kslaw.com
>           vleppert@kslaw.com
>
>Ursula Marie Henninger
>Florida Bar Number 801631
>KING & SPALDING LLP
>Suite 3900
>100 N. Tryon St.
>Charlotte, NC 28202
>Telephone: (704) 503-2631
>Fax: 704/503-2600
>Email: UHenninger@kslaw.com
>
>Lisa Horvath Shub (*admitted pro hac vice*)
>KING & SPALDING LLP
>500 W. 2nd Street
>Suite 1800
>Austin, TX 78701
>Telephone: (512) 457-2000
>Email: lshub@kslaw.com
>
>*Attorneys for Defendant Coloplast Corp.*

## **LOCAL RULE 3.08(B) CERTIFICATION**

Pursuant to Local Rule 3.08(b), the undersigned certifies that Coloplast Corp. consents to the requested continuance.

>/s/ David J. Walz
>Attorney

19

## **LOCAL RULE 3.01(G) CERTIFICATION**

Pursuant to Local Rule 3.01(g), the undersigned certifies that he conferred by email and telephone regarding this motion, and Plaintiff's counsel does not consent to the requested relief.

                                                /s/ David J. Walz
                                                Attorney