1

1     UNITED STATES DISTRICT COURT
      MIDDLE DISTRICT OF FLORIDA
2       ORLANDO DIVISION
 - - - - - - - - - - - - - - - - X
3 VIRGINIA REDDING,     :
           : Case No.:
4   Plaintiff,    : 6:19-cv-1857-CEM-GJK
 vs.         :
5          : Orlando, Florida
 COLOPLAST CORP.,   : September 20, 2021
6          :
   Defendant.    :
7 - - - - - - - - - - - - - - - - X

8    TRANSCRIPT EXCERPT OF MOTION HEARING
    BEFORE THE HONORABLE CARLOS E. MENDOZA
9     UNITED STATES DISTRICT JUDGE
 APPEARANCES:

10

11 Counsel for Plaintiff:   Jeffrey M. Kuntz, Sarah S. Ruane,
          and Vanessa H. Gross
12         Wagstaff & Cartmell
         4740 Grand Ave., Suite 300
13         Kansas City, MO 64112

14         Geoffrey T. Moore
         Maher Law Firm
         631 W. Morse Blvd., Suite 200
15         Winter Park, FL 32789

16 Counsel for Defendant:   W. Ray Persons, Valentin Leppert,
         and Ursula M. Henninger
17         King & Spalding, LLP
         1180 Peachtree St N.E., Suite 3700
18         Atlanta, GA 30309-3521

19         David J. Walz
         Carlton Fields, PA
20         4221 W. Boy Scout Blvd., Suite 1000
         Tampa, FL 33607

21

 Proceedings recorded by mechanical stenography.
22 Transcript produced by computer-aided transcription.

23 Court Reporter: Suzanne L. Trimble, CCR, CRR, RPR
        Federal Official Court Reporter
24        401 West Central Boulevard, Suite 4600
        Orlando, Florida 32801
25        e-mail: trimblecourtreporter@gmail.com

2

1                    T A B L E   O F   C O N T E N T S

2
         <u>PROCEEDINGS</u>                                         <u>PAGE</u>
3

4                          September 20, 2021

5

6    Defense Argument Re: Defense Motion to Strike
       Dr. Ralph Zipper, By Mr. Walz (Doc. 242).............. 4
7    Plaintiff's Argument Re: Defense Motion to Strike
       Dr. Ralph Zipper, By Mr. Kuntz (Doc. 242)............. 24
8    Judge's Ruling Re: Defense Motion to Exclude
       Evidence of Coloplast's Marketing (Doc. 195).......... 30
9    Judge's Ruling Re: Defense Motion to Exclude
       Minutes or Notes From Coloplast's Women's Health
       Advisory Board Meetings (Doc. 196)................... 33
10   Judge's Ruling Re: Defense Motion to Exclude
       Evidence of Foreign Sales (Doc. 197)................. 35
11   Colloquy Re: Bifurcation of Punitive Damages........... 36
     Judge's Ruling Re: Defense Motion to Strike
12     Dr. Ralph Zipper (Doc. 242)......................... 37
     Colloquy Re: Pretrial Hearing Schedule................ 40
13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                    P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  Virginia Redding v. Coloplast

3   Corporation, Case No. 6:19-cv-1857.

4      Counsel, please state your appearances for the record

5   starting with the Plaintiff.

6          MR. KUNTZ:  Your Honor, Jeffrey Kuntz, Vanessa Gross,

7   Sarah Ruane, and local counsel Jeff Moore on behalf of Plaintiff

8   Virginia Redding.

9          THE COURT:  Good afternoon.

10          MR. WALZ:  Good afternoon, Your Honor.  David Walz

11   from Carlton Fields on behalf of Defendant Coloplast Corp.  With

12   me today is Mr. Ray Persons from King & Spalding; Ursula

13   Henninger, also from King & Spalding, and Val Leppert.

14          THE COURT:  All right.  Good afternoon.  Feel free to

15   be seated.

16      All right.  There are four pending motions before the Court.

17   My plan is to issue oral findings on all four.  If you would

18   like a copy of the transcript, you can order it from my

19   courtroom deputy.

20      I understand that you had anticipated making some

21   presentation.  So if I could guide you in those presentations.

22   Defendant's motion in limine No. 2, Document 195; Defendant's

23   motion in limine No. 3, Document 196; and Defendant's motion in

24   limine No. 4, Document 197 were well briefed.  I'm prepared to

25   issue my rulings on those.  If there's anything you would like

4

1      me to consider additionally, I will deliberate and then return

2      and possibly incorporate any additional matters that I'm unaware

3      of into those.

4          But the one I would ask you to focus primarily on, because I

5      am undecided, is No. 4, Defendant's amended updated renewed

6      motion to strike Dr. Ralph Zipper or in the alternative to

7      continue trial, motion to strike, Document 242.  I have a few

8      questions on that particular motion, but if you have any

9      presentations, you're certainly invited to present them, but

10     specifically No. 4 is one I'm still deliberating on.

11         So this is Defendant's amended updated renewed motion.  So

12     is the Defendant ready to proceed?

13             MR. WALZ:  Yes, Your Honor.  Would you like to start

14     with that motion first?

15             THE COURT:  I would like to start with that one and

16     use whatever remaining time we have on the other three.

17             MR. WALZ:  May I, Your Honor?

18             THE COURT:  Sure.  Wherever you're comfortable.

19             MR. WALZ:  May it please the Court.

20         There are a few key points that control the analysis of the

21     motion to strike Dr. Zipper and dictate why the Court should

22     strike Dr. Zipper.  Based on Plaintiff's response and the status

23     of the pleadings now, which as Your Honor mentioned, is

24     Document 242, and Plaintiff's response, Document 250, a few

25     critical points.

1       One, Plaintiff does not challenge the point that Dr. Zipper

2   may not offer expert opinions and may not testify as an expert.

3   Plaintiff insists that Dr. Zipper is only a fact witness.

4       Two, Plaintiff concedes that Dr. Zipper was not mentioned in

5   this case, not disclosed in this case before January 8th, 2021,

6   in Plaintiff's trial witness list.  There was no prior

7   disclosure under Rule 26 as either a supplementation under

8   Rule 26(e) or as any sort of expert disclosure under Rule 26.

9       And last, Plaintiff admits that Dr. Zipper does indeed

10   intend to offer opinion testimony, and the record is replete at

11   this point with examples of this, Your Honor, starting actually

12   from the trial witness list mentioned served in January of 2021

13   which references opinions that Dr. Zipper will offer,

14   Dr. Zipper's deposition itself completed last month, and then

15   Plaintiff's response, Document 250.

16       Now, a little context is useful in the sense of these points

17   and for that a chronology of events here.  As Your Honor knows,

18   this case was filed in the MDL, the multidistrict litigation

19   proceeding, and initiated there.  And the first Document

20   relevant to our analysis today, our argument today, is we go

21   back now to December 17th, 2018, and this is Plaintiff's first

22   amended Plaintiff fact sheet, and this is in the record at

23   Document 202-1, 202-1.  And this amended Plaintiff fact sheet

24   served in December of 2018 is notable -- on the first page,

25   first of all, just to clarify what a Plaintiff fact sheet is and

6

how it was intended to function in this case and how it does

indeed function in this case, in the second paragraph there on

page 1 of the Plaintiff fact sheet, *A completed fact sheet shall*

*be considered interrogatory answers pursuant to Federal Rules of*

*Civil Procedure 33 and 34 and will be governed by the standards*

*applicable to written discovery.  You must supplement your*

*responses if you learn that they are incomplete or incorrect in*

*any material respect.*  So the Plaintiff fact sheet, for all

intents and purposes, is an interrogatory response, falls under

Rule 33, same duty to supplement under Rule 26(e), and then at

the paragraph above the Plaintiff was given the option that if

currently information was unknown or full information was not

available as of December of 2018, that if you cannot recall all

of the details requested, please provide as much information as

you can and then state that your answer is incomplete and

explain why as appropriate.  So that's the framework for that

Plaintiff fact sheet.

Now, scrolling through the Plaintiff fact sheet, Plaintiff

identified treating physicians relating specifically to the

implants of the Coloplast products.  This is page 13 now of the

Plaintiff fact sheet.  It's page 5 of Document 202-1.  Plaintiff

identified those physicians but then also other treating

physicians and not only just other treating physicians but every

doctor, hospital, or other health care provider.

There's no dispute here that in all of these listings of

1    treaters, whether that treated Ms. Redding relating to the

2    implants of this product or previously or thereafter -- there's

3    no dispute that Dr. Zipper is not a treating physician.  He's

4    not identified in any of these points, and Dr. Zipper, in fact,

5    admitted at his deposition, which is at page 14, line 25, to

6    page 15, line 1, quote, *I know absolutely nothing about*

7    *Ms. Redding or her claims*, end quote.  So that was the physician

8    portion of the Plaintiff fact sheet.

9        Now, there's another part of the Plaintiff fact sheet that

10    is a section on fact witnesses, other fact witnesses.  And

11    similar to the rest of the fact sheets, nothing whatsoever

12    mentioned about Dr. Zipper, no listing, no identification, no

13    disclosure.  That's December of 2018.

14        We move forward a couple of months into early 2019, and

15    February 22, 2019, that's Plaintiff's Rule 26 expert witness

16    disclosures.  The case is still in the MDL.  These disclosures

17    were made in the MDL court.  Plaintiff identified retained

18    expert witnesses and other experts and listed five of the

19    experts in this case and then a conditional regulatory expert.

20    No identification of Dr. Zipper.  Plaintiff also made the

21    statement, the affirmative statement, that discovery is ongoing

22    and Plaintiff further reserved the right, as allowed by

23    Rule 26(e) of the Federal Rules of Civil Procedure, to

24    supplement this designation and disclosure of expert witnesses

25    through the discovery process upon receiving additional

1   discovery.  That's Plaintiff's fact sheet so far and expert

2   witness disclosure.

3        Now, discovery proceeded through the MDL at that point,

4   including of Coloplast corporate reps, and later in 2019 the

5   case was remanded to this court, to Your Honor.  And we had a

6   telephonic status conference in October of 2019, and thereafter

7   the parties submitted a case management report.  And

8   Plaintiff -- this is a section of the case management report as

9   Document 98, this is page 2, the very bottom of page 2, which

10  sets forth and is titled *Plaintiff's Position,* and this is

11  Plaintiff's position on the case at that point.  A couple of

12  issues that were pending there were whether we were going to

13  rebrief Daubert motions, whether we were going to be able to

14  rebrief summary judgment motion under Florida law, things along

15  those lines.  Plaintiff adopted the transfer order in the sense

16  of saying, In the transfer order Judge Goodwin stated that,

17  quote, *The time to conduct discovery is complete on the cases on*

18  *Exhibit A, and the parties have had time to file dispositive and*

19  *Daubert motions, responses and replies.*  Plaintiff then, after

20  arguing that no rebriefing of the Daubert motions was necessary,

21  summarized her position of the status of the case, and that was

22  that -- bottom of page 3 -- quote, *Plaintiff's position is that*

23  *no further discovery is necessary or permitted, and the case are*

24  *ready for trial.  This position is in line with the MDL judge's*

25  *transfer order and the current status of the case.*  The only

1   reference that Plaintiff made to anything else in the case was

2   that Plaintiff would provide any medical records concerning any

3   relevant changes in her condition or treatment since her

4   deposition in December of 2018.  So the case upon remand from

5   the MDL, according to Plaintiff is, discovery is closed, nothing

6   further necessary.  Case is ready for trial.  That is the end of

7   2019.

8       Now, during the rest of 2020, the case proceeded through

9   pretrial proceedings multiple times.  Trial dates moved, as many

10  other cases did during the course of 2020, based on the

11  situation in the courts and the country in general.  At one

12  point the parties had an agreement to exchange witness lists on

13  September 30th, 2020, but that agreement was pushed off after

14  another continuance of the trial date, and then we reach, on

15  January 8, 2021, now in the process of proposing the joint final

16  pretrial statement -- the joint final pretrial statement was due

17  at that point on January 19th, 2021 -- and in the Plaintiff's

18  trial witness list, for the first time, there is a disclosure of

19  Dr. Ralph Zipper and a short couple sentence summary of his

20  expected testimony.

21      Now, the chronology in the sense of --

22      Well, actually, first of all, sum up, what do we know from

23  the chronology so far?  We know that there was no disclosure

24  whether in any of the documents in the MDL or no hint that any

25  further disclosure or discovery was necessary upon return from

1    the MDL and no disclosure at all before the trial witness list

2    and that at no point, whether under Rule 26(e), 26(a) for expert

3    disclosures, there was never any expert disclosure of

4    Dr. Zipper.

5        And that chronology in summation is important background for

6    this issue of fact witness versus expert witness because, again,

7    Plaintiff makes no argument that expert testimony or opinions

8    from Dr. Zipper are allowed.  We know from Plaintiff's response,

9    for example, the argument is simply straightforward.  One,

10   Dr. Zipper, Dr. Zipper's testimony will be fact witness

11   testimony, and as a result, the disclosure of Dr. Zipper as a

12   fact witness was timely.  No argument in terms of expert

13   opinions, timing, things along those lines.

14       We know though from Plaintiff's own argument in that same

15   response -- this is Document 250 now I'm referencing.  First of

16   all, starting at page 4, Plaintiff's own argument framed the

17   whole analysis here in terms of he's a fact witness, he's not an

18   expert witness, in the context of opinions.  Plaintiff

19   summarizes her position, talks about Dr. Zipper's testimony

20   based upon research, observations, findings, and opinions and

21   conclusions, and then in the key point of her argument, the

22   thrust of the argument is -- and this is still on page 4 -- the

23   distinction between an expert and lay witness in this context is

24   simple.  Dr. Zipper does not reach his opinions based upon

25   materials provided by counsel in a retained agreement with

1    Plaintiff.  Instead, Dr. Zipper reaches opinions years ago based

2    on information he obtained about the NovaSilk product during his

3    own experience and research under a retained agreement with

4    Defendant Coloplast.

5        Now, setting aside the substance of legal point, that that's

6    not the correct legal analysis of when someone is a fact witness

7    versus an expert witness, Plaintiff admits that Dr. Zipper

8    offers opinion testimony, and that's what the intent is.

9        And with now the benefit of Dr. Zipper's deposition, that's

10   plainly true from Dr. Zipper's own mouth as well.  Dr. Zipper,

11   for example, in a series of exchanges at his deposition -- I'm

12   reading now from page 158, starting at line 20.  This is

13   Dr. Zipper.  There had been an exchange about whether he was

14   being asked expert questions, and Dr. Zipper says, line 20, *You*

15   *did.  You asked me my opinion on braided suture material.  That*

16   *was -- that was an opinion, not a fact.  You asked me my opinion*

17   *on other things related to mesh.*  Next page or page 160,

18   Dr. Zipper, line 10, *And I would like to go on the record saying*

19   *that I have been asked expert questions by defense counsel,*

20   *which I think and -- well, actually, I'm answering them no*

21   *matter who asked them.  I'm not saying it's limited to defense*

22   *counsel.*  The substance of Dr. Zipper's deposition, he himself

23   refers to it as expert opinions and expert testimony.

24       And then when we get into questioning by Plaintiff's counsel

25   on page 163 now, the summation of what Dr. Zipper is testifying

1   about is the following:

2       Line 11, *Question:  You are testifying regarding your*

3   *observations, findings, opinions, and conclusions regarding the*

4   *risks and complications associated with NovaSilk based on your*

5   *experience, your own experience, and research, correct?*

6       *Answer:  Correct.*

7       And that's consistent with the same phraseology that was

8   used in the expert witness disclosure back in -- I'm sorry, not

9   the expert witness disclosure.  The trial witness list that was

10  served for the first time with the first mention of Dr. Zipper

11  in January of 2021.  That framed the substance of the testimony

12  there as opinions and conclusions.  Now on this point, in terms

13  of we know from -- we know from Plaintiff's response brief and

14  we know from Dr. Zipper's own phraseology, that the approach to

15  Dr. Zipper is opinion testimony, expert testimony.

16      Now, in argument on this, Plaintiff cites only Rule 701 of

17  the Federal Rules of Evidence and a Seventh Circuit case.  This

18  is still page 4 of the response, *Indianapolis Airport Authority*.

19  Now, the citation to Rule 701 is interesting because 701

20  expressly excludes testimony that is based on scientific,

21  technical, or other specialized knowledge within the scope of

22  Rule 702, which is where expert testimony properly resides.  To

23  that end, Rule 702 parrots that same standard, scientific,

24  technical, or specialized knowledge.  Dr. Zipper's testimony

25  falls squarely within scientific, technical, or other

13

1    specialized knowledge.

2         In terms of the Seventh Circuit case cited by Plaintiff, the

3    argument there is that that case addressed and allowed similar

4    witnesses to testify subject to the Federal Rules of Evidence.

5    While I would dispute the similar witnesses description there, a

6    couple of key points that are different in that Seventh Circuit

7    case is that on the page prior to the page that Plaintiff cites,

8    this is page 370 -- and the full cite, while we're at it, is 849

9    F.3d 355, Seventh Circuit, 2017.  On page 370, the Court makes

10   it clear that there were expert disclosures served involving the

11   experts -- or, the witnesses at issue there, that there were

12   expert disclosures served under Rule 26(a)(2)(C) and that also,

13   later in that same case at footnote 6, the Court actually

14   excluded testimony that was more in line with or in line with

15   expert testimony.  So the *Indianapolis Airport Authority* case

16   does not present this issue of similar witnesses.

17        The case that does present a similar issue and the case that

18   is on point is the *Hill* case.  The *Hill* case is cited in our

19   motion.  It's Your Honor's case.  It's the *Hill v. Allianz Life*

20   *Insurance Company of North America*, from January of 2016.  And

21   that addressed these same issues, and the issue there in *Hill*

22   was that Plaintiff disclosed witnesses and called them lay

23   witnesses or fact witnesses, and Defendant argued that they are

24   actually expert witnesses.  So the Court went through the same

25   analysis that we just talked about there, looking at Rule 701

14

1   and seizing upon that key language that 701 excludes the

2   language that converts a witness over into 702, scientific,

3   technical, or other specialized knowledge.

4       What the Court also did there, and now we're at page star 2

5   of the *Hill* order, is the Court expressly went through the

6   Advisory Committee's notes to Rule 701, and that's the 2000

7   amendment, and summarized exactly why this distinction exists.

8   And the Court stated, *This last requirement is intended to*

9   *eliminate the risk that the reliability requirements set forth*

10  *in Rule 702 will be evaded through the simple expedience of*

11  *proffering an expert in lay witness closing and also ensures*

12  *that a party will not evade the expert witness requirements set*

13  *forth in Rule 26 by simply calling an expert witness in the*

14  *guise of a lay person.*

15      Now, in terms of the specific arguments and the argument by

16  Plaintiff, for example, that, well, Dr. Zipper is not an expert

17  because he's not formally retained, there's no retention

18  agreement, and he's just testifying about his opinions gained

19  from his own personal experience, well, argument was similar in

20  *Hill*.  In *Hill*, the Plaintiff argued that the witnesses at issue

21  were lay witnesses.  They had personally observed the customs

22  and practices in the relevant industry, and therefore quote --

23  this is now star 3 of *Hill* -- *are testifying based on their*

24  *personal experience and not specialized knowledge.*  And Your

25  Honor recognized the fallacy of that argument and held, *This*

1    *argument would, taken to its logical conclusion, end all*

2    *distinction between expert and lay witnesses, as presumably all*

3    *experts have personal knowledge of the field in which they are*

4    *experts, as Rule 701 is focused on whether a witness has*

5    *personal knowledge of facts relevant to the subject case and not*

6    *whether a witness has personal knowledge as to the basis of his*

7    *opinion.*  As a result there, the Court held that the testimony

8    of the witnesses would be based upon that specialized

9    knowledge -- quote, *specialized knowledge within the scope of*

10   *Rule 702 and is explicitly prohibited by both the letter and the*

11   *spirit of Rule 701.*

12       And that's the same context here, Your Honor.  The testimony

13   here would be based on specialized knowledge.  It's Rule 702

14   testimony.  It's not Rule 701 testimony.  And I don't want to

15   come across like I'm just putting a label on this as well in the

16   sense of saying that, well, because Dr. Zipper stated -- he

17   called it himself, *you were asking me opinion questions or*

18   *expert questions*.  It really is the substance here that matters

19   because working through Dr. Zipper's deposition, the substance

20   of his testimony is opinions on virtually every substantive

21   issue at this case, from the substantive claims to Coloplast's

22   conduct to the whole gamut from design defect through failure to

23   warn to every other issue.  Dr. Zipper offers opinions on

24   failure to warn, fraud, misrepresentation.

25       For example, he testified at page 149 of his deposition,

1   line 15 -- and I should have mentioned the deposition is in the

2   record as well.  It's an exhibit to Document 250, the complete

3   deposition.  Dr. Zipper stated was that -- back to 149, 15, *What*

4   *we, I, learned after 2008, that the labels, the information*

5   *published and provided by the manufacturers, in this case*

6   *Coloplast, was misleading, and that I had relied on misleading*

7   *information in planting this material.*

8       Very next page he goes on to write -- or talk about more of

9   his opinions on the same points, but then also even incorporates

10  product design.  Page 150, line 11, Dr. Zipper:  *So after we*

11  *wrote this abstract, we learned that we had been misled about*

12  *the safety of the material, that the inflammation was not*

13  *transient, that the pore size was not sufficient.*  And he goes

14  on and on and on, all relative to the safety of the material

15  itself or as to product design.

16      It continues on failure to warn and more on design defect,

17  for example, at page 151 to 152, same kind of point in general.

18  I don't want to just stand here and read lines of testimony into

19  the record, but important what we get here now is that his

20  opinion was that he had been misled by device companies -- this

21  is page 151, line 22 -- including Coloplast, in their IFUs, in

22  their labeling about the material, the material used, and he

23  goes into inflammation, the transient or not transient nature of

24  it, the pore size, the flexibility of the product.  He basically

25  subsumes just about every theory of design defect that Plaintiff

1   has or may offer in this case.

2       He goes even further and makes the outright statement on

3   page 155, line 17:

4       *QUESTION:  What would you say now, based on what you've*

5   *learned inside your practice?*  This is from questioning by

6   Plaintiff's counsel.

7       *ANSWER:  That the material was defective.  The label was*

8   *defective.  This was just based on my experience with it and my,*

9   *you know, the things that I was told about the product were*

10  *misleading and/or completely incorrect.*

11      He also opines on the inadequacy, in his opinion, of the

12  risk-benefit analysis conducted before bringing NovaSilk to

13  market.  That goes directly to substantive opinions.  Risk

14  benefits is the standard for design defect in Florida in a case

15  involving a complex medical prescription product.

16      And then he goes further in the sense of offering opinions

17  or his beliefs about Coloplast's honesty, conduct, whether he

18  felt misled.  This is page 192, line 16:

19      *QUESTION:  Are you calling Coloplast dishonest?*

20      And he answers, *To the extent that misleading information*

21  *and a label is dishonest and to the extent that Coloplast was*

22  *aware of their labels, then, yes.*  He hedges a little bit and

23  says he likes a lot of people at Coloplast, but I believe it is

24  true.  He goes on to talking about the labels along similar

25  points and finally wraps up that in his personal opinion, on

1    page 208 now of the deposition, lines 5 and 6:

2         *QUESTION:  You felt mislead by Coloplast NovaSilk IFU?*

3         *ANSWER:  Yes.*

4         All of this testimony, Dr. Zipper's testimony, is opinion

5    testimony or expert testimony.  It fits right in with the quote

6    from *Hill* in terms of the conclusion as to the fact

7    witness/expert witness distinction and, really, the Rule 701

8    versus 702 distinction.  Page star 4 of the *Hill* order, quote,

9    *Plaintiff attempts to do exactly what Rule 701 forbids, clothe*

10   *his expert witnesses in lay person garb.*

11        Now, the point that Dr. Zipper is a -- he's not a fact

12   witness.  And that also disposes of Plaintiff's argument on

13   timely disclosure, that Dr. Zipper was timely disclosed.

14        Before I move on, we have a complete summary of everything

15   that was disclosed and not disclosed before the January 2021

16   disclosure and then also all of the points from which we know

17   that Dr. Zipper is offering opinion testimony, all the way back

18   to that disclosure, running all the way through most recently

19   his deposition and Plaintiff's response, and Plaintiff's

20   response to argument.

21        Still focusing on fact witness exclusively, we know that

22   Dr. Zipper is really an expert witness, so the timely disclosure

23   argument, timely disclosed as a fact witness is nonstarter to

24   begin with in that regard, but even so, even if you presume, if

25   you cast aside all of that testimony and you presume that

1    Dr. Zipper was a fact witness, Plaintiff cannot eliminate the

2    duty to supplement, the duty to disclose witnesses, disclose

3    opinions by relying on a trial witness list as the first time

4    that a witness is identified, that a person is identified,

5    especially with the chronology of events here, where we know

6    that the fact sheets going back several years took on what every

7    Rule 26(e) obligation provides, all the way through the expert

8    witness disclosures, and the position that Plaintiff took upon

9    remand here to this Court, that there was nothing -- expert

10   discovery was closed, briefing was done, everything was ready to

11   go.

12       It also is contrary -- or this argument is also contrary to

13   the holding in -- Your Honor's holding in the *Hill* case, which

14   also addressed the same point, untimely disclosure.  And the

15   situation in *Hill* was similar in that there was no disclosure of

16   the two witnesses at issue in the initial disclosures.  They

17   were not otherwise made known to Defendant through discovery.

18   This is page star 5 now.  And there's no indication in the

19   record that the potential witnesses had any involvement in the

20   facts of the case or should have otherwise been known by

21   Defendant, thus the Court -- thus the Court concluded that

22   Plaintiff had an obligation to disclose these witnesses in a

23   timely manner upon becoming aware that they had information that

24   Plaintiff must rely on in supporting his claims.

25       Now, the situation there was actually that five days after

the close of discovery the *Hill* Plaintiff had identified two witnesses in interrogatory responses.  That's a much different context than the disclosure here where we're more than a year after discovery closed in the MDL.  And the disclosure in *Hill* was untimely.  Much longer time period at issue in this case.

And then the other point from *Hill* was that Plaintiff has not provided the Court with a date or even an estimate of when Plaintiff had learned that those witnesses had pertinent information.  And as a result, Plaintiff hadn't met the burden.

Now, the closest the Plaintiff -- it's a similar situation here in terms of Plaintiff not meeting the burden.  But the closest that Plaintiff gets to anywhere along these lines is pointing back at Coloplast that, oh, well, we should have known since a deposition of a specific Coloplast corporate representative, corporate designee in the MDL, which was Mr. Dale Klous in April of 2019.  And I don't concede that that's actually accurate or how that plays out.  It's an extremely attenuated argument that because Mr. Klous referenced a summary of published literature that he then somehow, because Dr. Zipper co-authored one or two of those pieces, that as a result everybody knows that Dr. Zipper was now part of the case.

So that's what Plaintiff says, that, well, there's really no issue here.  Coloplast should have known of this.  Coloplast knew about Dr. Zipper as long ago as Dale Klous's deposition.  Well, that kind of goes both ways because Dale Klous's

1    deposition was on April 16th of 2019.  The case was still in the

2    MDL, hadn't been remanded here yet.  Plaintiff did nothing in

3    terms of supplementation at that point.  So even as a fact

4    witness, which he's not, Dr. Zipper's disclosure is untimely.

5        Now, finally, turning to Rule 37 and the assessment under

6    Rule 37, the first point is that Plaintiff makes no -- even

7    though Plaintiff bears the burden of proof here, Plaintiff makes

8    no Rule 37 argument.  The closest we get is really a general

9    prejudice argument on pages 8 and 9 of the response.  And

10   Plaintiff doesn't address the five factors, for example, that

11   apply, that the Court looked at in the *Hill* case, and,

12   basically, Plaintiff blames Coloplast for not doing something

13   sooner than 2021 to try to pursue Dr. Zipper or take his

14   deposition.  The issue there though is that overlooks that

15   Coloplast's motion to strike Dr. Zipper in full was pending at

16   that time.  It's also worth looking at *Hill* here as well, in

17   terms of the timing, because much of Plaintiff's prejudice

18   argument focuses on, well, there's enough time now to cure any

19   issue, no big deal, no harm.

20       Well, in the *Hill* case, when there was -- when the

21   Plaintiff's argument there, the late disclosing party's argument

22   failed there in *Hill*, that case was in a less advanced posture

23   than here.  Dispositive motions were still pending.  We hadn't

24   gone through years of discovery, more than a year of pretrial

25   proceedings in this court.  And the motion in *Hill* was filed six

1    months before, before trial.  So it's not as if this is an eve

2    of trial kind of issue and that was the crux.  The Court still

3    held the Plaintiff failed to meet the Rule 37 standard.

4        In terms of that Rule 37 standard, I mean, substantial

5    justification we've discussed already.  There's really no

6    serious argument, given the chronology as to substantial

7    justification.  And then on harmlessness or the lack of

8    harmlessness, that's outlined in our motion.

9        But specifically, to keep things focused, in terms of

10   Plaintiff's response, Plaintiff downplays the significance of

11   Dr. Zipper's testimony.  For example, at page 9, says that

12   Dr. Zipper's testimony -- I'm sorry, page 9 of the response --

13   *Dr. Zipper's testimony at its core merely provides historical*

14   *context for Coloplast's research regarding and use of NovaSilk*

15   *and how it trained its physicians on the same.*

16       Well, just in the excerpts of testimony that I read here

17   today, let alone the rest that is in the record and cited in our

18   motion, it's plainly far different than simple historic context,

19   historical context.  Dr. Zipper's testimony, this opinion

20   testimony, fundamentally changes the dynamics of trial.

21   Plaintiff addressed this in the response too, but it goes to one

22   of our expert's opinions, Dr. Stone, and it's the substance of

23   Dr. Zipper's opinions.  I went through every pending claim that

24   is in this case at this point, and Dr. Zipper's opinions not

25   just about those claims, but in some instances specifically the

1    standard on those claims and then also the shading in around the

2    edges in terms of conduct, deception, misleading.

3         And the other issue here, in the sense of historical

4    context, it's important to note here that Dr. Zipper is

5    disclosed not until a trial witness list.  He's then deposed.

6    And the time frame in which he's speaking of, he's talking about

7    a transition from a prior entity Mentor to -- Coloplast acquired

8    one of Mentor's divisions.  We're talking about a time period in

9    2006 and before 2006.  Dr. Zipper is talking about an abstract

10   that he authored in 2008.

11        The dynamics change because Dr. Zipper comes into his

12   deposition, he's dropping names, he's identifying Coloplast

13   former employees.  There's a tremendous amount of legwork

14   necessary and ongoing investigation necessary to dig back

15   15 years, 15-plus years, in the sense of Dr. Zipper coming in

16   and attempting to provide support for his opinions.

17        As a result, in terms of this assessment of Rule 37, that's

18   set forth in our motion, but the steps that would be necessary,

19   the additional steps set forth that would need to occur if

20   Dr. Zipper is allowed to testify we addressed those in the

21   motion, but it's not as simple as simply, you know, the

22   prejudice argument that the Plaintiff makes.

23        And it's for all of those reasons that the Court should

24   grant the motion to strike Dr. Zipper.

25             THE COURT:  Well, Dr. Zipper is not a newcomer here.

1   He's been called as an expert by these same counsel.  Do you

2   have any theory or idea as to why they would disclose him so

3   late?

4            MR. WALZ:  My understanding, Your Honor, is that that

5   is correct.  Dr. Zipper has testified involving the same -- in

6   cases involving the same counsel as Ms. Redding's counsel in

7   other pelvic mesh cases involving other manufacturers.

8            THE COURT:  No. I know all that.  But it seems he

9   would be the first person to be on disclosure lists based on his

10  prior experience in these cases.  So why?

11           MR. WALZ:  I can't speculate as to that, Your Honor.

12           THE COURT:  Well, they won't have to.  I'll ask them.

13  So thank you for your argument on that point.  I appreciate it.

14           MR. WALZ:  Thank you, Your Honor.

15           THE COURT:  Would the Plaintiff like to respond?

16           MR. KUNTZ:  Yes, Your Honor.

17           THE COURT:  You know what the first question out of

18  the gate is.  Why the late disclosure?

19           MR. KUNTZ:  I have a really good idea.

20      Jeffrey Kuntz on behalf of the Plaintiff, Your Honor.  May

21  it please the Court.

22      I'll address your question straight on.  The fact of the

23  matter is, Dr. Zipper has never worked for us on a Coloplast

24  case.  I've never talked to him about a Coloplast case.  In

25  fact, I hired him one time a long time ago and decided never to

1   hire him again because he was too expensive.  Now, I've had

2   subsequent cases after the remand where firms who could not

3   handle these trial cases have come to us and they had hired

4   Dr. Zipper, so we inherited him, but those are non-Coloplast

5   cases.  Those are cases against Johnson & Johnson and other

6   manufacturers.  I've never read an expert report by him from

7   Coloplast.  I've never hired him.  I don't know his opinions on

8   Coloplast.

9        When we were getting ready for trial, for the first time I

10  was talking to another treating physician, and as you can

11  probably tell from some of the briefs, one of the key issues in

12  the case, the key defense is the implanter, Dr. Weaver, put this

13  product in wrong.  That's their number one defense.  And I was

14  talking to other treaters getting ready for trial, and one of

15  those treaters, local treaters told me, Well, you know Ralph

16  Zipper is the one that trained all of us to put in the NovaSilk

17  product at issue in this case and told us to do it exactly as

18  Dr. Weaver did it.  That's the first time I knew.  Light bulb

19  went on, designated him as a fact witness the next day.  I had

20  no knowledge of that prior because, again, I don't even think

21  he's issued a Coloplast report.  He's done Ethicon, he's done

22  maybe Boston Scientific, but not against Coloplast.  I've never

23  discussed his opinions.  So that's the context.

24       And I'll own that late disclosure.  That's the first time I

25  had information that he had anything to do -- he actually is the

1   one that was paid by Coloplast and hired to create the training

2   DVD video.  I just did not know that until that point.  So we

3   identified him at that point.  So hopefully that answers your

4   question on that issue.

5        THE COURT:  So can you give me a proffer as to what

6   you expect to elicit from Dr. Zipper?

7        MR. KUNTZ:  And that's a really good question.  I'm

8   going to -- I can answer that first, then I'll go back to where

9   I was going to start.

10       THE COURT:  Sure.

11       MR. KUNTZ:  That's the big deal in this case.

12   Depositions talk, other expert reports from other cases, that's

13   not what happens at trial.  I'll tell you right now, when I put

14   him on the stand -- I have other experts to cover labeling,

15   design defect, all of those issues.  He's going to be asked

16   factual issues about the two abstracts he wrote on the product

17   at issue in this case and how to implant the product NovaSilk at

18   issue in this case and how you do it.  That's it.  I'm not going

19   to ask him anything more.

20       And I get what happened at the deposition, but you have to

21   understand my situation at the deposition as well.  We have to

22   protect the record.  A lot of those questions were elicited by

23   defense counsel that came out in the deposition.  If I don't ask

24   these questions or we don't ask our questions on direct, you

25   know, get his qualification out, get his opinions, here is my

1    problem:  A year or two years down the road in another case

2    involving Coloplast, when I want to go depose Dr. Zipper, you

3    know what I'm going to get, a motion that his deposition has

4    already been taken.  So I have to protect the record at the

5    deposition.  That has no, you know, bearing on what's going to

6    happen here at trial.

7        And I'm telling you here today I'm going to keep him in a

8    fact box.  I'm going to keep him in a 701 box.  And I think

9    there's a dig difference, again, what he is and what he isn't.

10   And looking at the Florida case law -- you know, I'm not from

11   here.  I know Missouri and Kansas.  I tried to read a lot of it

12   this weekend, and it's like a lot of it's a bad law review

13   treatise on 25(b) and (c) and nonretained and lay and expert.

14   But I think the Florida case law is clear.  You know, like a

15   treating physician, if that treating physician stays in his box

16   of personal observation of his treatment, he's a lay fact

17   witness.  I'm keeping Dr. Zipper in his box of 701, his

18   knowledge that he gained from Coloplast when they paid him a lot

19   of money and a lot of work before Plaintiff's attorney ever paid

20   him a dime.

21       They want to paint him as a Plaintiff's mouthpiece.  What he

22   really is is a whistleblower.  And so he is a fact witness, no

23   different than treating physician talking about his personal

24   observations.

25       When we get into scientific, technical, and take that next

1  step, that's when treating physicians or fact witnesses take

2  their knowledge and experience and give causation opinions, give

3  design defect opinions.  He's not going to do that in this

4  courtroom, Your Honor.

5      Hopefully that answers your questions and that addresses a

6  lot of my argument, but I wanted to go back to where I started

7  on the no harm, no foul.  You know, it's case after case of

8  surprise sandbagging, concealment, prejudice, compliance,

9  nondisclosure, talking about a fact sheet that's a form back in

10  the MDL.  The reality is, by the time this case goes to trial,

11  they'll know his opinions for 14 months.

12      And they knew their number one defense in this case a long

13  time ago was it was that Dr. Weaver put it in wrong.  So that's

14  not a surprise.  They keep talking about supplementing

15  Dr. Stone's report.  That's already in his report.  I don't need

16  to depose him again.

17      There's no Daubert issues because he's not giving scientific

18  opinions and causation opinions.  He's just giving fact witness

19  opinions.  So I suspect, Your Honor, when you wrote your order

20  on June 29, 2021, it says, *What have you done to cure the*

21  *prejudice?*  Because, you know, the *Griffith* case from the

22  Eleventh Circuit that says, don't strike Defendant's experts

23  when defense counsel -- or the plaintiff's experts when the

24  defense counsel has had a chance to intervene.  The fact is,

25  they did nothing for five months to do anything.  They finally

1   went and got his deposition, and now the trial has been moved

2   even farther.  So they have all the time to do anything they

3   want to do to try to cure any surprise.

4       But the fact of the matter is, he worked for them.  They

5   know what he was going to say.  They showed up at his deposition

6   with 30 expert reports from other cases.  There was no surprise

7   here.  I just think it's a no harm, no foul situation at this

8   point, especially with the trial date being moved.  But even if

9   we go back to our original trial date that was only a month out

10   that he was designated, I still think we are within the law

11   because he's a 701 fact witness.

12              THE COURT:  All right.

13              MR. KUNTZ:  That's all.  Thank you, Your Honor.

14              THE COURT:  I'm going to take a brief recess to review

15   a few items before I return to the bench.  So it's going to be

16   no more than 15 minutes.  Court's going to stand in recess.

17       (Recess at 2:21 p.m., until 2:33 p.m.)

18              THE COURT:  This cause is before the Court on the

19   following motions:

20       First, Defendant's motion in limine No. 2 to exclude

21   evidence of Coloplast's marketing and promotion unrelated to

22   Plaintiff's implanting physician, filed as Document 195, to

23   which Plaintiff filed a response in opposition, Document 226.

24       Second, Defendant's motion in limine No. 3 to exclude

25   evidence concerning any minutes or notes from meetings of

1   Coloplast's Women's Health Advisory Board, Document No. 196, to

2   which Plaintiff filed two responses, Document Nos. 228 and 231.

3       Third, Defendant's motion in limine No. 4 to exclude

4   evidence of foreign sales, Document 197, to which Plaintiff

5   filed an opposition, Document 225.

6       And, finally, Defendant's amended updated renewed motion to

7   strike Dr. Ralph Zipper or in the alternative to continue trial,

8   motion to strike, Document 242, to which Plaintiff filed a

9   response, Document 250.

10      The Court has the power to exclude evidence in limine only

11  when evidence is clearly inadmissible on all potential grounds,

12  *Stewart v. Hooters of Americas Incorporated*, No. 8:04-cv-40,

13  2007 Westlaw 1752843 at 1.  Middle District of Florida,

14  June 18th, 2007.

15      Unless evidence meets this high standard, evidentiary

16  rulings should be deferred until trial so that questions of

17  foundation, relevancy, and potential prejudice may be resolved

18  in proper context, *United States v. Gonzalez*, 718 F. Supp. 2d

19  1341 at 1345.  Southern District of Florida, 2010.

20      The movant has the burden of demonstrating that the evidence

21  is inadmissible on -- let me say that again.

22      The movant has the burden of demonstrating that the evidence

23  is admissible on any relevant ground -- inadmissible on any

24  relevant ground.

25      The Coloplast marketing materials as filed in motion,

31

Document No. 195:

The Coloplast marketing materials related to this motion in limine fall into three potential categories:  One, marketing materials never used by Defendant in the United States; two, marketing materials used by Defendant but not used or reviewed by the Plaintiff's treating physician, Dr. Weaver; and, three, marketing materials used or reviewed by Dr. Weaver.

Defendant argues that only marketing materials seen or relied upon by Dr. Weaver are relevant and that Dr. Weaver testified during his deposition that he did not review any such materials.  Therefore, Defendant argues all three categories of evidence should be excluded.

Plaintiff contends that Dr. Weaver was never asked at his deposition whether he reviewed such materials, and therefore, to the extent that a foundation can be laid that Dr. Weaver viewed marketing materials, those are admissible.  Additionally, Plaintiff argues that all three categories of evidence should be admitted as relevant to Plaintiff's punitive damage claims.

Pursuant to Federal Rule of Evidence 402, only relevant evidence is admissible.  Quote, *Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining this action*, closed quote, Federal Rule of Evidence 401.  The Eleventh Circuit has noted that, quote, *the standard for what constitutes relevant evidence is a low one*, closed

1    quote, *South Grand View Development Company v. City of*

2    *Alabaster*, 2021 U.S. Appellate LEXIS 18400, at 16.  Eleventh

3    Circuit, June 21, 2021.  Quoting *United States v. Tinoco*, 304

4    F.3d 1088 at 1120.  Eleventh Circuit, 2002.  However the court

5    may exclude relevant evidence if its probative value is

6    substantially outweighed by confusion or unfair prejudice,

7    Federal Rule of Evidence 403.

8         District courts in the Eleventh Circuit have routinely

9    excluded as irrelevant marketing materials not relied upon by

10   the physician.  See *Christiansen v. Wright Medical Technology*

11   *Incorporated*, 2015, U.S. District LEXIS 147805, at 44.  Northern

12   District of Georgia, October 30, 2015.  Therefore, absent

13   foundational evidence that marketing or promotional materials

14   are actually viewed by Dr. Weaver, the first two categories of

15   evidence will be excluded as to Plaintiff's claims regarding

16   liability.  As to the third category of evidence, to the extent

17   that Plaintiff can lay a foundation at trial, it may be

18   admitted, and to the extent that Defendant believes that

19   Dr. Weaver testified to the contrary during deposition, that

20   line of questioning is appropriate for impeachment on

21   cross-examination.

22        However, all three categories of evidence, to the extent

23   they are related to the product implanted in Plaintiff, are

24   admissible to show knowledge of wrongfulness for the issue of

25   punitive damages.  *Swintelski v. American Medical Systems*, 2021

33

1    U.S. District LEXIS 164301 at 12.  Southern District of Florida,

2    August 9, 2021.  Defendant has not moved to bifurcate the trial

3    as to punitive damages, so for the time being, this motion will

4    be denied in its entirety because the evidence is admissible

5    limited to the issue of punitive damages.

6        All of the marketing materials related to the implanted

7    product are admissible for consideration of punitive damages.

8    The motion, Doc. 195, is therefore denied.

9        Defendant describes Women's Health Advisory Board as a focus

10   group comprised of both Coloplast employees and outside

11   consultants that met annually between 2007 and 2014 with the

12   goal of providing Coloplast with clinical feedback and

13   commentary regarding the various products it developed,

14   marketed, and sold to address women's intimate healthcare needs,

15   including but not limited to female pelvic surgical mesh

16   implants.  Defendant moves for the exclusion of any minutes or

17   notes from the advisory board meetings arguing that they are

18   hearsay and that it does not fall within any exception,

19   Document 196 at 1.

20       Hearsay is an out-of-court statement offered in evidence to

21   prove the truth of the matter asserted in the statement, Federal

22   Rule of Evidence 801(c).  Hearsay is inadmissible, unless it

23   falls under an exception.

24       Plaintiff argues that the meeting notes contain dozens of

25   assertions that may be offered for purposes other than the truth

of the matter asserted, such as to show Coloplast's notice of a particular problem with its products, and, therefore, the motion should be denied in its entirety, Document 231 at 2. Additionally, to the extent that the meeting notes are offered for the truth of the matter asserted, Plaintiff argues they are not hearsay, and they are an opposing party's statement, and that they also fall under the business records exception to the hearsay rule.  However, Defendant contends that even if the meeting notes themselves are not hearsay or fall under an exception, then many of the statements within the notes also constitute hearsay.

Notably, Defendant did not attach to its motion any of the meeting notes it seeks to exclude.  Plaintiff attached the notes from two of the meetings, each of which is a very different record.  Compare Document 231-1 with Document 231-2.  On their face they are clearly hearsay and sometimes double and triple hearsay if offered for the truth of the matter asserted. However, based on what is currently before the Court and without having any idea what portion of the notes will be offered into evidence and for what purpose, the Court cannot possibly determine whether they may be excluded from the hearsay definition or fall within an exception.  Therefore, the motion will be denied.  Counsel is invited to offer contemporaneous objections at trial or ask the Court for a proffer at trial.

Defendant has not met its burden for complete exclusion of

1    the meeting notes.  I recommend that the parties confer and see

2    if they can narrow down which notes they plan on offering into

3    evidence so the Court may efficiently rule on the admissibility

4    at trial.  The motion, Document 196, is therefore denied.

5        Defendant argues in Document 197 the motion in limine

6    regarding Coloplast's foreign sales, that evidence related to

7    foreign sales of the pelvic mesh product implanted in Plaintiff

8    should be excluded as irrelevant because Defendant receives no

9    profits from any foreign sales of these devices and no such

10   sales are reflected in Defendant's balance sheet, Document 197

11   at 1.

12       Plaintiff counters that such evidence is relevant and the

13   Defendant is improperly attempting to exclude it because

14   Defendant is a wholly owned subsidiary of a parent company that

15   sells and profits from the devices in these countries.

16   Document 225 at 1.  Additionally, Plaintiff contends that even

17   if Defendant were not a wholly owned subsidiary, the evidence is

18   relevant.

19       Plaintiff avers that evidence of foreign sales of the

20   implanted product is relevant to show:  One, Defendant was

21   negligent in launching the devices without performing the

22   necessary studies, including a randomized controlled trial; two,

23   the devices were negligently and defectively designed, launched,

24   and sold; three, Defendant had sufficient notice and knowledge

25   of the risks posed by the unsafe and defective devices; four,

1    Defendant failed to adequately warn of the risks posed by the

2    unsafe and detective devices; and, five, Defendant continued to

3    sell the devices to patients worldwide, including Plaintiff,

4    despite all of the problems that were being reported throughout

5    the world.  The Court agrees.  If the implanted product is the

6    same as the product sold in foreign markets, Plaintiff has

7    satisfied the low bar for relevancy.  *South Grand View*, 2021

8    U.S. Appellate LEXIS 18400, at 16.

9         Defendant has failed to demonstrate that evidence of foreign

10   sales of the implanted product is inadmissible on all potential

11   grounds, and Plaintiff has shown that it is potentially

12   relevant.  Because evidence is relevant for the above-stated

13   reasons, the Court need not consider the argument regarding

14   profits of a parent company of a wholly owned subsidiary.  The

15   motion, 196, is denied.

16        And, finally, the motion to strike.

17        And I've got to ask this question for planning purposes.  Is

18   the Defendant planning on seeking bifurcation of any punitive

19   portions of the trial?

20        MR. WALZ:  At this time, Your Honor, no.

21        THE COURT:  Okay.  All right.  There are a few more

22   moving parts with the final part of the order we're trying to

23   do.  We're trying to multitask.  So I have my law clerks putting

24   it together the way I want it put together.  I need to proofread

25   it before I read my decision on the motion to strike.  That's

1    the most complicated of the four pending.  So give me a few more

2    minutes.  I need to proof it.  I need to make sure it's where it

3    needs to be, and I'll return to issue that order.  So the Court

4    is briefly going to stand in recess.

5         (Recess at 2:43 p.m., until 2:58 p.m.)

6              THE COURT:  Oral findings on the Defendant's motion to

7    strike, Document 242:

8         Defendant's motion to strike seeks to preclude the testimony

9    of Plaintiff's witness, Dr. Ralph Zipper.  Defendant maintains

10   that Plaintiff intends to elicit expert testimony from

11   Dr. Zipper but that Dr. Zipper was never disclosed as an expert

12   and has not provided an expert report.  Alternatively, Defendant

13   argues that even if Dr. Zipper is a fact witness, he was still

14   untimely disclosed and, therefore, should be prohibited from

15   testifying.

16        Under Rule 26(a), Plaintiff had a duty to disclose the name

17   and, if known, the address and telephone number of each

18   individual likely to have discoverable information, along with

19   the subjects of that information, that Plaintiff may use to

20   support its claims or defenses, unless the use would be solely

21   for impeachment.  Federal Rule of Civil Procedure

22   26(a)(1)(A)(i).

23        Federal Rule of Civil Procedure 26(a)(2) sets forth the

24   expert disclosure requirements, which provide that all expert

25   witnesses must be disclosed and that certain experts must

1    provide written reports in conjunction with that disclosure.

2    The disclosure of an expert witness must be accompanied by a

3    written expert report, if the witness is one retained or

4    specially employed to provide expert testimony in the case or

5    one whose duties as the party's employee regularly involve

6    giving expert testimony.  Federal Rule of Civil Procedure

7    26(a)(2)(B).

8        Even if a witness is not required to provide a written

9    report, however, they still must be disclosed, and the

10    disclosure must state:  (i) the subject matter on which the

11    witness is expected to present evidence; and (ii) a summary of

12    the facts and opinions to which the witness is expected to

13    testify.  Federal Rule of Civil Procedure 26(a)(2)(C).

14        Under Rule 37, if a party fails to identify a witness as

15    required by Rule 26(a) -- regardless of whether it is an expert

16    or fact witness -- the party is not allowed to use that witness

17    or supply evidence at a trial, unless the failure was

18    substantially justified or is harmless.  Federal Rule of Civil

19    Procedure 37(c)(1).

20        The burden of establishing that a failure to disclosure was

21    substantially justified or harmless rests on the nondisclosing

22    party.  *Leathers v. Pfizer Incorporated*, 233 F.R.D. 687 at 697,

23    Northern District of Georgia.  The district court has broad

24    discretion in determining whether a violation was justified or

25    harmless under Rule 37.  *Pitts v. HP Pelzer Auto. Systems,* 331

1    F.R.D. 688 at 692, Southern District of Georgia 2019, quoting

2    *Abdulla v. Klosinski*, 898 F.Supp. 2d 1348 at 1359, Southern

3    District of Georgia 2012.  In addition to or instead of

4    exclusion, the court, on motion and after giving an opportunity

5    to be heard, may impose other appropriate sanctions.

6        Plaintiff has represented that Dr. Zipper's testimony will

7    be limited to his personal knowledge of how he, on behalf of

8    Defendant, trained doctors to implant the device at issue.  At

9    this point, this testimony appears to be factual and does not

10   constitute an expert opinion.  On this basis, on this limited

11   basis, Dr. Zipper's testimony will not be excluded.

12       While his disclosure was untimely, he was disclosed on

13   January 8th, 2021, and Defendant has now had the opportunity to

14   depose him.  Given that trial in this matter has been moved to

15   April 2022, the untimely disclosure is hereby harmless, as

16   concluded by the Court.

17       That being said, the Court agrees with Defendant that any

18   opinions offered by Dr. Zipper here would certainly fall within

19   Rule 702, and, therefore, his disclosure would be untimely and

20   prejudicial.  Plaintiff is cautioned not to elicit such opinions

21   in the presence of the jury.

22       Accordingly, motion to strike, Document 242, is granted

23   insofar as it asked to exclude any opinions by Dr. Zipper, any

24   expert opinions as to Dr. Zipper or opinions in general, but is

25   denied insofar as it asked to strike him as a fact witness.

40

1    All right.  Is there anything further from the Plaintiff at

2    this time?

3         MR. KUNTZ:  Your Honor, just one clarification, if you

4    will.  In reading the order, it talked about how it was

5    implanted, but also I just want to make clear, when we get to

6    trial, that we would ask him about the abstracts he wrote

7    factually while there.

8         THE COURT:  The only thing you've convinced me on is

9    that if he testifies that under the tutelage of Coloplast it was

10   my job to train these doctors to perform this procedure in this

11   way, which I would imagine you're going to point out is

12   consistent with what your physician witness is going to claim he

13   did, that's fact testimony.  I've made no decision as to

14   anything else, subject to contemporaneous objections.

15   But what you're telling me -- look, I don't want to give

16   advisory opinions here, but short of that, it's hard for me to

17   envision anything else you're going to get out of this witness

18   that's not going to be opinion.

19        MR. KUNTZ:  Understood.

20        THE COURT:  And maybe you can figure out how to --

21   maybe you can figure out how to thread that needle, but other

22   than this, I don't see how you get anything else out of this

23   witness that's not going to be opinion based.

24        MR. KUNTZ:  Understood.  Thank you.

25        THE COURT:  Anything from the defense at this point?

41

1          MR. PERSONS:  Not related to the motions, Your Honor,

2    but I have something I would like to raise.

3          THE COURT:  Sure.

4          MR. PERSONS:  And for the record, Ray Persons.

5          THE COURT:  Good afternoon, Mr. Persons.  The floor is

6    yours.

7          MR. PERSONS:  Your Honor, with the change in the

8    schedule and the pretrial conference now being set for March

9    the 11th, 2022, I've got a conflict on that date and would

10   respectfully request --

11         THE COURT:  For the pretrial conference only?

12         MR. PERSONS:  Yes, Your Honor.  I don't have a

13   conflict with the trial or anything else on the schedule, but I

14   do have a conflict for March the 11th, which is a Friday.

15         THE COURT:  Tell me about your conflict, and I don't

16   mean what you're doing.  I need to know how long you'll be

17   unavailable.  Is it just that day or that part of that day.

18         MR. PERSONS:  I'm unavailable that week.

19         THE COURT:  That entire week.

20         MR. PERSONS:  The week of the -- yeah, the 6th through

21   the 11th, Your Honor.

22         THE COURT:  But you're generally available the week

23   prior or subsequent to?

24         MR. PERSONS:  Yes, Your Honor.

25         THE COURT:  Is there any objection from the Plaintiffs

42

1   as to moving that March 11th pretrial to the 18th at the same

2   time?

3          MR. KUNTZ:  Your Honor, I hate to even say it, but

4   it's spring break or all of us.

5          THE COURT:  What about March 1st?

6          MR. KUNTZ:  I have kids, and I don't want to get

7   divorced.

8          THE COURT:  I don't blame you.  What about March 4th?

9          MR. KUNTZ:  That works for us, Your Honor.

10         THE COURT:  Does that work for you, Mr. Persons?

11         MR. PERSONS:  Yes, Your Honor.

12         THE COURT:  Are you speaking on behalf of all of your

13   colleagues as well?

14         MR. PERSONS:  Yes, Your Honor.

15         THE COURT:  And I understand.  I don't want to get in

16   the way of familial harmony.  So we're not going to do the 18th.

17   My daughter is in college, so she probably doesn't want to see

18   me on spring break anyway.  All right.  So we're going to do

19   March 4th at 10:00 a.m.

20       Is there anything further from the defense at this time?

21         MR. PERSONS:  No, Your Honor.  Thanks for the

22   accommodation.

23         THE COURT:  All right.  Thank you.  Have a safe trip

24   back, everyone, and I'll see you on --

25       By the way, have we made a decision, Maria, on whether we're

43

1    doing the 4th telephonically or in person?

2              THE COURTROOM DEPUTY:  I had it telephonically.

3              THE COURT:  We'll keep it telephonic.  If there's a

4    reason to do it in person, you're invited to reach out to

5    Ms. Hernandez.  Otherwise, I think it would be more efficient to

6    do it by telephone.

7         Thank you.  Have a good afternoon everyone.

8         (WHEREUPON, this matter was concluded at 3:06 p.m.)

9                               *   *   *

10                      CERTIFICATE OF REPORTER

11
     I certify that the foregoing is a correct transcript of the
12   record of proceedings in the above-entitled matter.

13
      /s/ Suzanne L. Trimble_____             9/29/21
14    Suzanne L. Trimble, CCR, CRR, RPR            Date
      Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25